**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| CURA INDUSTRIES, LLC, | ) | **CASE NO. 4:26-cv-04079-CCT** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S BRIEF IN** |
| SUNNY MAKHIJANI & MY FOOT | ) | **OPPOSITION TO DEFENDANTS'** |
| PODIATRY PLLC, | ) | **JOINT MOTION TO DISMISS** |
| | ) | **PURSUANT TO FED. R. CIV. P.** |
| Defendants. | ) | **12(B)(2)** |
| | ) | |
| | ) | |

Plaintiff Cura Industries, LLC, ("Cura") respectfully submits this Brief in Opposition to Defendants' Joint Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(2).

## INTRODUCTION

### I.    Summary of Factual Allegations.

Prior to January 13, 2025, Sunny Makhijani ("Sunny"), "the principal and sole member of the named entity defendant, My Foot Podiatry, PLLC ("My Foot", and collectively with "Sunny", the "Defendants"), engaged Stella Sweeney "to procure certain medical products for [his] practice." (Doc. 6: Decl. of Sunny Makhijani in Supp. of Defs.' Joint Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(2) ("Sunny Decl."), ¶¶ 1, 4; see also Doc. 5: Defs.' Brief in Supp. of Joint Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(2) ("Memorandum"), P. 2.) Pursuant to this engagement, "Ms. Sweeney found [Cura Industries, LLC] as a manufacturer of such [medical] products and completed the paperwork necessary to order the same." (Doc. 6: Sunny Decl., ¶

4; see also Doc. 5: Memorandum, P. 2.) That paperwork included the Fulfillment Agreement dated January 13, 2025, between Cura Industries, LLC ("Cura") and the Customer, identified on the signature line as "Sunny Makhijani DPM" (the "Fulfillment Agreement"). (Complaint, ¶ 1; Decl. of Ronnie Merchant ("Merchant Declaration"), ¶ 6; Ex. A; see Doc. 6: Sunny Decl., ¶ 4; see also Doc. 5: Memorandum, P. 2.)

Pursuant to the terms of the Fulfillment Agreement, Cura agreed to sell to the Customer human cell and tissue products (the "Products"). (Doc. 1-1: Complaint, ¶ 1; Merchant Decl., Ex. A). The Fulfillment Agreement contemplated an ongoing relationship between the Defendants and Cura by imposing continuing obligations on each other, including shipping, payment, and documentation obligations. (Merchant Decl., Ex. A.) Cura provided invoices reflecting the outstanding amount owed by the Defendants to Cura for the Products ordered and used by the Defendants, as well as any relevant rebates or credits. (Merchant Decl., Ex. A, Section 6). Sunny agreed to pay Cura the balance stated in each invoice within sixty (60) days of the invoice date. (Merchant Decl., Ex. A, Section 6). The Fulfillment Agreement did not condition Defendants' payment obligation on their receipt of compensation or reimbursement from their patients or their insurers. (Merchant Decl., Ex. A). The Fulfillment Agreement also contained a choice of law provision providing that it is governed by South Dakota law." (Merchant Decl., Ex. A, Section 7). The Fulfillment Agreement also includes the Customer Onboarding Agreement, which identifies Ms. Sweeney as a "Distributor" on behalf of the Defendants, who are identified in the Customer Information section of the Customer Onboarding Agreement. (Merchant Decl., Ex. A, P. 1). Included with the Fulfillment Agreement and the Customer Onboarding Agreement was the Credit Card Authorization form. (Merchant Decl., Ex. A, P. 4). The Credit Card Authorization form contained the contact information, including Cura's address in South Dakota.

(*Id.*). It also contained the email address to place an order. (*Id.*). Ms. Sweeney later emailed Defendants' order to Cura using that email address. (Merchant Decl., Ex. B).

Following the execution of the Fulfillment Agreement, Ms. Sweeney communicated with Cura on behalf of the Defendants and transmitted an order form to procure Products. (Doc. 6: Sunny Decl., ¶ 7; Merchant Decl. Ex. B; see also Doc. 5: Memorandum, P. 2.). Pursuant to the order placed by Ms. Sweeney, Cura sent Products and subsequently invoiced Defendants for those products. (Doc 1-1: Complaint, ¶ 4; Merchant Decl., Ex. B, P. 5) Consequently, Cura has been damaged in the amount of $158,238.49 (the "Outstanding Balance") plus interest and costs. (Doc. 1-1 Complaint, ¶¶ 5-7).

## II.   Standard of Review.

In order "'[t]o defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction[,]' and may do so by affidavits, exhibits, or other evidence." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004) (quoting *Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 647 (8th Cir.2003)). Further, the court "must view the evidence in the light most favorable to [the nonmoving party] and resolve factual conflicts in its favor." *Id.* at 983. However, this does not shift the burden Cura bears to establish the court's personal jurisdiction. *Id.* at 983-84. "In a diversity action, '[a] federal court . . . may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.'" *Id.* at 984 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir.2004)).

South Dakota's long arm statute provides that "[a]ny person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing

3

personally, through any employee, <u>through an agent</u> or through a subsidiary, of any of the following acts: (1) The transaction of any business within the state; . . . (14) The commission of any act, the basis of which is not inconsistent with the Constitution of this state or with the Constitution of the United States." S.D.C.L. § 15-7-2 (1) and (14) (emphasis added). "South Dakota's long arm statute, SDCL 15-7-2, is to be construed broadly when evaluating jurisdiction." *Davis v. Otten*, 2022 S.D. 39, ¶ 13, 978 N.W.2d 358, 364 (citing *Rothluebbers v. Obee*, 2003 S.D. 95, ¶ 24, 668 N.W.2d 313, 322). South Dakota's long arm statute is "'intended to provide South Dakota residents with maximum protection of South Dakota courts' from injury by nonresidents 'when that nonresident has had the necessary minimal contacts with the state to comply with federal due process.'" *Drier v. Perfection, Inc.*, 259 N.W.2d 496, 501 (S.D. 1977) (quoting *Ventling v. Kraft*, 161 N.W.2d 29, 34 (S.D. 1968)).

To determine if the exercise of personal jurisdiction comports with due process, the court must decide if the "'non-resident defendant had sufficient minimum contacts with the forum, such that assertion of personal jurisdiction does not offend "traditional notions of fair play and substantial justice."'" *J & L Farms, Inc. v. Jackman Fla. Wagyu Beef, LLC*, 2024 S.D. 29, ¶ 14, 7 N.W.3d 695, 700 (quoting *Marschke v. Wratislaw*, 2007 S.D. 125, ¶ 14, 743 N.W.2d 402, 406). South Dakota courts have established the following "three step test to determine whether minimum contacts exist and due process is satisfied." *Id.* at 700 (quoting *Daktronics, Inc. v. LBW Tech Co.*, 2007 S.D. 80, ¶ 6, 737 N.W.2d 413, 417).

> Under the three-step test: First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the

4

benefits and protections of its laws. Second, the cause of action must arise from defendant's activities directed at the forum state. Finally, the acts of defendant must have substantial connection with the forum state to make the exercise of jurisdiction over defendant a reasonable one.

*J & L Farms,* 2024 S.D. 29, ¶ 14, 7 N.W.3d at 700 (internal citations omitted).

The analysis focuses on the "quality and nature" of contacts with the forum state. *Id.* at 700; *Davis,* 2022 S.D. 39, ¶ 21, 978 N.W.2d at 366 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945)). A nonresident defendant's contacts must be substantial enough that it could reasonably anticipate being haled into court there. *J & L Farms,* 2024 S.D. 29, ¶ 15, 7 N.W.3d at 700 (citing *Davis,* 2022 S.D. 39, ¶ 21, 978 N.W.2d at 366 (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980))).

Purposeful availment is established where a defendant deliberately engaged in significant activities in the forum state or created continuing obligations with forum residents. *J & L Farms, Inc.,* 2024 S.D. 29, ¶ 19, 7 N.W.3d at 701 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-76 (1985)). "While a choice of law provision in itself is insufficient to create personal jurisdiction, it remains a relevant consideration in determining whether a defendant has purposefully availed itself in the forum state." *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.,* 111 F.3d 1386, 1390 (8th Cir. 1997).

The second step of the analysis is satisfied when an out of state defendant has issued important documents "addressed and directed to and for the benefit of" a South Dakota entity. *J & L Farms,* 2024 S.D. 29, ¶ 21, 7 N.W.3d at 702. This is especially true when such documents were "instrumental to induce and facilitate the shipment

of" goods by a South Dakota entity from South Dakota. *Id.* The lack of physical presence in South Dakota is not determinative due to the nature of how business is regularly transacted across state lines solely relying on mail and wire communications. *Id.* at 701 (citing *Burger King Corp.*, 471 U.S. at 476).

For the third step, the court considers "'the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief' and the interest of other states in securing the most efficient resolution of controversies." *Daktronics, Inc.*, 2007 S.D. 80, ¶ 17, 737 N.W.2d at 419 (quoting *Denver Truck and Trailer Sales, Inc. v. Design and Bldg. Servs., Inc.*, 2002 SD 127, ¶ 19, 653 N.W.2d 88, 93 (quoting *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113 (1987))).

Modern transportation and communication have significantly reduced the burden on a party to defend themselves in another state, so much that it will usually not be unfair to subject that party to the burdens of litigating in a state where they have engaged in business. *Daktronics, Inc.*, 2007 S.D. 80, ¶ 17, 737 N.W.2d at 420 (citing *Burger King Corp.*, 471 U.S. at 474). "South Dakota has an interest in resolving contractual disputes that have a significant impact on a South Dakota corporation." *Id.* at 420. Put plainly, "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities.'" *J & L Farms, Inc., LLC*, 2024 S.D. 29, ¶ 22, 7 N.W.3d at 702 (quoting

*Daktronics, Inc.*, 2007 S.D. 80, ¶ 11, 737 N.W.2d at 418 (quoting *Burger King Corp.*, 471 U.S. at 473)).

**ARGUMENT**

Defendants' Memorandum raises only one defense to personal jurisdiction, that Defendants used an agent—Ms. Sweeney—to procure products on their behalf. They argue that "[s]uch downstream connection with Plaintiff does not constitute a contact with the State of South Dakota and falls well short of the purposeful-availment requirement." Defendants' argument fails to appreciate that under South Dakota law, a defendant cannot escape personal jurisdiction by acting through an agent. South Dakota's long arm statute S.D. Codified Laws § 15-7-2 expressly applies to defendants who act through an agent, employee, and/or subsidiary.

I. **Stella Sweeney acted as the agent of the Defendants and entered into the Fulfillment Agreement on their behalf.**

Ms. Sweeney's acts are imputed to Defendants for purposes of jurisdictional analysis. Prior to the execution of the Fulfillment Agreement, Sunny individually, or collectively with My Foot, engaged Ms. Sweeney "to procure certain medical products" for My Foot. (Doc. 6: Sunny Decl., ¶¶ 1, 4; see also Doc. 5: Memorandum, P. 2.) This engagement constituted a direct grant of actual authority to enter into contracts for medical products, like the Products sold by Cura. Pursuant to this authority, Ms. Sweeney identified Cura as a seller of the Products, determined that the Products met the Defendants' needs for medical products, "completed the paperwork necessary to order the same" including order forms, and managed "[a]ll communications and transaction relevant to the allegations" related to this matter. (Doc. 6: Sunny Decl., ¶¶ 1, 4; see also Doc. 5: Memorandum, P. 2.) Defendant's

declaration clearly establishes that Ms. Sweeney either was explicitly granted actual authority to contract with Cura or, at minimum, acquired such authority through Defendants' acquiescence to her conduct. S.D.C.L. § 59-3-2; see also *Sullivan*, 430 N.W.2d at 701–02.

As the exhibits to the Merchant Declaration make clear, Ms. Sweeney disclosed her principals, Sunny Makhijani and My Foot Podiatry PLLC. (Merchant Decl., Ex. A). The Products were ordered on their behalf, and were shipped to the Defendants in New York. (Merchant Decl., Ex. B). The Defendants accepted the Products shipped from South Dakota, used them, and failed to pay for them.

Ms. Sweeney had the actual authority to bind Defendants to the Fulfillment Agreement. Therefore, Defendants may be held liable for breach of the Fulfillment Agreement, regardless of whether either of the Defendants individually executed it. More importantly for this Motion, the actions of Ms. Sweeney are the actions of the Defendants. They entered into a contract with a South Dakota entity, which included the protection of the laws of South Dakota. (Merchant Decl., Ex. A, p. 3, Section 7). Defendants knowingly and affirmatively ordered product from South Dakota, were informed that the product was being shipped from South Dakota, and accepted delivery.

II. **Defendants' contacts with Cura Industries, LLC, through Ms. Sweeney, satisfy all conditions necessary for this court to exercise personal jurisdiction over the Defendants in this matter.**

    a. *Defendants purposefully availed themselves of the protections of South Dakota law.*

8

Here, Ms. Sweeney, on behalf of the Defendants as their agent, intentionally entered into the Fulfillment Agreement with Cura after she sought out Cura as a provider of certain medical products that would be used by the Defendants in their practice. (Doc. 6: Sunny Decl., ¶¶ 1, 4; see also Doc. 5: Memorandum, P. 2.) The Fulfillment Agreement contemplated that the Defendants and Cura, a South Dakota limited liability company, would be engaged in an ongoing relationship for the sale and purchase of Products. Cura's address—displayed on both the Credit Card Authorization form and the Order Form—identified Cura as a South Dakota entity. The choice-of-law provision put Defendants on notice that the Agreement would be performed, in part, in South Dakota and that South Dakota law would govern any disputes. The Cura Packing Slip and FedEx shipping label, emailed to Defendants before shipment, likewise confirmed South Dakota as the shipment origin. (Merchant Decl. Ex. B). (*Id.*).

Cura is a South Dakota limited liability company, and for the reasons described above, the Defendants' contacts with South Dakota through Ms. Sweeney—including the Fulfillment Agreement's South Dakota choice-of-law provision—support a finding of purposeful availment. *See Northwest Airlines, Inc.*, 111 F.3d at 1390. The first condition for South Dakota courts to exercise personal jurisdiction is satisfied. *See* S.D.C.L. § 15-7-2(1), (14); *Romak USA, Inc.*, 384 F.3d at 984.

    b.  *The exercise of personal jurisdiction by this Court comports with federal due process requirements.*

The Defendants' contacts with South Dakota readily satisfy the minimum contacts required for this Court to exercise personal jurisdiction consistent with due process. The Defendants argue that their relationship with Cura fails to meet the requisite minimum contacts required because the Defendants did not personally contract with Cura. This betrays a fundamental misunderstanding of agency law. While the Defendants are correct that their relationship was carried out through Ms. Sweeney, they are wrong to assume that such interposition of an agent eliminates any contacts with South Dakota.

South Dakota's long arm statute explicitly contemplates imposing liability on a principal through an agent. S.D.C.L. § 15-7-2 (1) and (14) ("Any person is subject to the jurisdiction of the courts of this state as to any cause of action arising from the doing personally, through any employee, through an agent or through a subsidiary, of any of the following acts: (1) The transaction of any business within the state; . . . (14) The commission of any act, the basis of which is not inconsistent with the Constitution of this state or with the Constitution of the United States.").

Any action done by Ms. Sweeney, in her role as agent, is imputed onto the Defendants and used to satisfy their minimum contacts. Indeed, permitting the Defendants to evade liability simply because they carried out their business through an agent would itself offend traditional notions of fair play and substantial justice. *See J & L Farms, Inc.*, 2024 S.D. 29, ¶ 14, 7 N.W.3d at 700. Despite the Defendants' lack of physical presence in South Dakota, or the practice of medicine in South Dakota, Ms. Sweeney's actions on behalf of the Defendants were of such quality and

nature that Ms. Sweeney and the Defendants should have reasonably anticipated being brought into court in South Dakota should a dispute arise under the Fulfillment Agreement. *See id.* ¶ 15, 7 N.W.3d at 700; *id.* ¶ 20, 7 N.W.3d at 701-02.

First, the Fulfillment Agreement entered into by Ms. Sweeney with Cura contemplated an ongoing relationship between the parties. The Fulfillment Agreement was not a one-off purchase order; rather, it established the obligations and rights of each party under future purchase orders: Ms. Sweeney, on behalf of the Defendants, would submit orders to Cura, Cura would fulfill them, and the Defendants would make payment pursuant to the Fulfillment Agreement's payment terms. The Agreement's framework for ongoing orders demonstrates that both parties contemplated a sustained commercial relationship. The Agreement's framework for ongoing orders thus demonstrates that both parties contemplated a sustained commercial relationship. The Fulfillment Agreement thus created continuing obligations between the Defendants through Ms. Sweeney and Cura, satisfying the first step of the due process analysis. *J & L Farms*, 2024 S.D. 29, ¶ 19, 7 N.W.3d at 701 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985)); *Id.* ¶ 22, 7 N.W.3d at 702).

Second, the Fulfillment Agreement, payments, emails, and return shipping labels were all explicitly directed to or for the benefit of Cura, a South Dakota limited liability company. *J & L Farms*, 2024 S.D. 29, ¶¶ 21-22, 7 N.W.3d at 702. Several of these documents, specifically the Fulfillment Agreement, the emails, and the return shipping labels, explicitly identified Cura as located in South Dakota. Each

11

supported and formed a key part of the ongoing relationship between the parties by providing the primary means of communication or by facilitating the Fulfillment Agreement's core purpose: the sale and purchase of Products.

Like many businesses, the Defendants, via Ms. Sweeney, and Cura conducted their dealings solely through mail and wire communications, without requiring the Defendants' physical presence in South Dakota to enter into and carry on the relationship under the Fulfillment Agreement. *Id.* ¶ 20, 7 N.W.3d at 701 (citing *Burger King Corp.*, 471 U.S. at 476). Therefore, Ms. Sweeney's actions satisfy the second step of the due process analysis.

Finally, the Defendants' relationship with Cura constitutes a substantial connection making the exercise of personal jurisdiction reasonable. The Fulfillment Agreement contemplated an ongoing relationship and created significant obligations between the parties. Cura was required to perform substantial work in South Dakota to fulfill its obligations, including packing and shipping Products, receiving returned Products, processing payments, and regularly communicating with Ms. Sweeney regarding the Defendants' orders and payment obligations. The Fulfillment Agreement also contained a choice of law provision requiring the application of South Dakota law to resolve this dispute. For all of these reasons, it is reasonable for South Dakota courts to exercise jurisdiction over the Defendants based on the terms of the Fulfillment Agreement, their substantial and continuing contact with South Dakota through the Defendants' relationship with Cura, and because South Dakota has an interest in protecting a South Dakota entity in a contract dispute with an out-of-

state defendant. *J & L Farms*, 2024 S.D. 29, ¶ 22, 7 N.W.3d at 702; see also *Daktronics, Inc.*, 2007 S.D. 80, ¶ 17, 737 N.W.2d at 420. In comparison, the relative inconvenience to the Defendants of litigating in South Dakota is slight. *Id.* (citing *Burger King Corp.*, 471 U.S. at 474).

## CONCLUSION

For the foregoing reasons, Plaintiff Cura Industries, LLC respectfully requests that the Court deny Defendants' Joint Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(B)(2).

Dated: May 29, 2026.                    CURA INDUSTRIES, LLC, Plaintiff


/s/ *Britni A. Summers*
Britni A. Summers, #5483
Jay D. Koehn SD Bar #5312
(*appearing Pro Hac Vice*)
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE  68102
(402) 341-3070
bsummers@mcgrathnorth.com
jkoehn@mcgrathnorth.com

*Attorney for Plaintiff*

13

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Britni A. Summers*
Britni A. Summers

14